IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, )<br>        Plaintiff, )<br>)<br>v. )<br>)<br>SOCAYR SFH, LLC d/b/a CRPS LIMITED )<br>PARTNERSHIP PG1 #1-6 and )<br>MICHESHIA NORMENT, as administratrix of )<br>the Estate of Dequante Hobbs, Jr., )<br>)<br>        Defendants. | Case Number   3:19-cv-485-GNS |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Jill F. Endicott and Marisa E. Main of Dinsmore & Shohl LLP, and for its Complaint for Declaratory Judgment against Defendants, SOCAYR SFH, LLC d/b/a CRPS Limited Partnership PG1 #1-6 ("CRPS") and Micheshia Norment, as administratrix of the Estate of Dequante Hobbs, Jr. ("Hobbs Estate"), it states as follows:

**THE PARTIES**

1.  Nautilus Insurance Company ("Nautilus") is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all relevant times hereto, Nautilus was a surplus lines insurer whose policies may be sold in Kentucky.

2.  At all times relevant hereto, CRPS was a limited liability company organized under the laws of Kentucky, with its principal place of business in Louisville, Kentucky.

3.  At all times relevant hereto, Dequante Hobbs, Jr. (deceased) was a citizen of Louisville, Kentucky.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## VENUE

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district and all defendants are residents of the State of Kentucky.

## THE UNDERLYING LAWSUIT

6. The Hobbs Estate filed a Complaint against Wyatt Lamarr Williams ("Williams") and CRPS, among others, in the Jefferson Circuit Court, Division Four, under Case Number 19-CI-01825 ("*Hobbs* Lawsuit"). (A copy of the *Hobbs* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

7. The *Hobbs* Lawsuit alleges that on or about May 21, 2017, at approximately 8:00 p.m., at or near the property located at 2109 West Madison Street, Louisville, Kentucky ("Premises"), Williams fired multiple gunshots from a handgun. (Ex. A, ¶ 13.)

8. The *Hobbs* Lawsuit further alleges that on or about May 21, 2017, at approximately 8:00 p.m., Dequante Hobbs, Jr. was struck by a bullet while he was sitting at his kitchen table in the house located at the Premises. (Ex. A, ¶ 14.)

9. The *Hobbs* Lawsuit alleges that Dequante Hobbs, Jr. sustained fatal injuries as a result of the gunshots fired by Williams. (Ex. A, ¶ 15.)

10. The *Hobbs* Lawsuit alleges that Williams acted in a wanton, grossly negligent, and negligent manner by firing multiple shots from a handgun at, on, or near the rear of the Premises. (Ex. A, ¶ 16.)

11. The *Hobbs* Lawsuit alleges that CRPS owns the Premises. (Ex. A, ¶ 17.)

12. The *Hobbs* Lawsuit alleges that CRPS rented the Premises to Micheshia Norment ("Norment"), the primary guardian and biological mother of Dequante Hobbs, Jr. (Ex. A, ¶ 18.).

13. The *Hobbs* Lawsuit alleges that CRPS knew or should have known and/or were aware of previous criminal acts in the area near the rear of the Premises, prior to May 21, 2017. (Ex. A, ¶ 19.)

14. The *Hobbs* Lawsuit alleges that defendants John Doe No. 1 and John Doe No. 2 were employees of CRPS and, at all times relevant hereto, were working within the scope of their employment with CRPS. (Ex. A, ¶ 20.)

15. The *Hobbs* Lawsuit further alleges that CRPS is vicariously liable for the negligent acts and omissions of John Doe No. 1 and John Doe No. 2. (Ex. A, ¶ 21.)

16. The *Hobbs* Lawsuit alleges that CRPS, John Doe No. 1, and/or John Doe No. 2 were negligent and grossly negligent in their failure to warn Norment of previous criminal acts that occurred at the Premises prior to May 21, 2017. (Ex. A, ¶¶ 22-23.)

17. The *Hobbs* Lawsuit alleges that CRPS, John Doe No. 1, and/or John Doe No. 2 controlled, oversaw, managed, and/or were responsible for the safety and security of their tenants and were negligent and grossly negligent when they told Norment that the Premises was a safe property to live at with her children, including Dequante Hobbs, Jr. (Ex. A, ¶¶ 24-27.)

18. The *Hobbs* Lawsuit further alleges that, Norment entered into a lease agreement for the Premises and moved into the Premises based upon statements from CRPS, John Doe No.

1, and/or John Doe No. 2 that the Premises was safe, and she detrimentally relied on these statements. (Ex. A, ¶¶ 28-29.)

19. The *Hobbs* Lawsuit alleges that CRPS, John Doe No. 1, and/or John Doe No. 2 should have anticipated any criminal acts which occurred on the Premises and that resulted in the death of Dequante Hobbs, Jr. (Ex. A, ¶¶ 30-31.)

20. The *Hobbs* Lawsuit further alleges that CRPS, John Doe No. 1, and/or John Doe No. 2 were negligent and grossly negligent when they failed to protect their tenants, including Norment and Dequante Hobbs, Jr. (Ex. A, ¶ 32.)

21. The *Hobbs* Lawsuit alleges that the negligence, wantonness, recklessness, and gross negligence of CRPS, John Doe No. 1, and/or John Doe No. 2 were the direct and proximate cause of Dequante Hobbs, Jr.'s death. (Ex. A, ¶¶ 47-48.)

22. The *Hobbs* Lawsuit further alleges that the wantonness, recklessness, and gross negligence of CRPS, John Doe No. 1, and/or John Doe No. 2 were the direct and proximate cause of mental and physical pain and suffering by Dequante Hobbs, Jr. (Ex. A, ¶¶ 49-50.)

23. The *Hobbs* Lawsuit alleges that the wantonness, recklessness, gross negligence, and negligence of CRPS, John Doe No. 1, and/or John Doe No. 2 were the direct and proximate cause of the Hobbs Estate incurring medical expenses and damage to real and personal property. (Ex. A, ¶¶ 51-52.)

24. The *Hobbs* Lawsuit alleges that the wantonness, recklessness, gross negligence, and negligence of CRPS, John Doe No. 1, and/or John Doe No. 2 were the direct and proximate cause of the Hobbs Estate incurring funeral costs and burial expenses, as well as a permanent destruction Dequante Hobbs, Jr.'s power to labor and earn money. (Ex. A, ¶¶ 53-54.)

25. The *Hobbs* Lawsuit further alleges that the wantonness, recklessness, gross negligence, and negligence of CRPS, John Doe No. 1, and/or John Doe No. 2 were the direct and proximate cause of Dequante Hobbs, Jr. suffering temporary and permanent injury, as well as pre-incident fright and mental suffering. (Ex. A, ¶¶ 55-56.)

26. The *Hobbs* Lawsuit alleges that the Hobbs Estate is entitled to recover all damages allowable under Kentucky's Wrongful Death Statute and Kentucky case law regarding wrongful death and damages incurred prior to death. (Ex. A, ¶ 58.)

27. The *Hobbs* Lawsuit seeks compensatory and punitive damages. (Ex. A.)

### THE NAUTILUS POLICY

28. Nautilus issued a commercial general liability insurance policy to CRPS under Policy Number IN946873 for the period of May 1, 2017 to May 1, 2018 ("Nautilus Policy"). (A copy of the Nautilus Policy is attached hereto as **Exhibit B** and incorporated herein by reference.)

### COUNT I

### THE "ASSAULT OR BATTERY" EXCLUSION BARS COVERAGE

29. Nautilus adopts and realleges the allegations in paragraphs 1 through 28 of its Complaint for Declaratory Judgment as paragraph 29 of Count I of its Complaint for Declaratory Judgment as if fully set forth herein.

30. The Nautilus Policy incorporates the following exclusion:

**EXCLUSION – ALL ASSAULT OR BATTERY**
\* \* \*

**A.** The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, **Coverage B – Personal And Advertising Injury Liability**, and **Coverage C – Medical Payments**:

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

**1.** Actual or alleged assault or battery;

**2.** Physical altercation; or

**3.** Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

**1.** Insured;

**2.** "Employee";

**3.** Patron; or

**4.** Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

**1.** All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

**2.** Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

    **a.** Emotional distress for loss of society, services, consortium or income; or

    **b.** Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

      **3.**    Any obligation to share damages with or repay someone who much pay damages because of the injury.

**B.**    We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

* * *

(hereinafter referred to as the "Assault Or Battery Exclusion"). (*See* Ex. B).

    31.    Even if the *Hobbs* Lawsuit alleged an "occurrence", which Nautilus expressly denies that it does, the Assault Or Battery Exclusion bars coverage for the damages alleged in the *Hobbs* Lawsuit.

    32.    Nautilus has and had no duty under the Nautilus Policy to defend CRPS against the *Hobbs* Lawsuit, or to indemnify CRPS for any judgment or settlement entered in the *Hobbs* Lawsuit.

    33.    An actual controversy exists between Nautilus, CRPS, and the Hobbs Estate, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

    WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

    b.    Find and declare that the Assault Or Battery Exclusion bars coverage under the Nautilus Policy for the claims asserted in the *Hobbs* Lawsuit;

    c.    Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend CRPS against the *Hobbs* Lawsuit, or to indemnify CRPS for any judgment or settlement entered in the *Hobbs* Lawsuit; and

    d.    Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## THE "PUNITIVE DAMAGES" EXCLUSION BARS COVERAGE

34. Nautilus adopts and realleges the allegations in paragraphs 1 through 33 of its Complaint for Declaratory Judgment as paragraph 34 of Count II of its Complaint for Declaratory Judgment as if fully set forth herein.

35. The Nautilus Policy incorporates the following exclusion:

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**
\* \* \*
The following exclusion is **added** to **2. Exclusions** of **Section I**:

This insurance does not apply to punitive or exemplary damages.
\* \* \*

(hereinafter referred to as the "Punitive Damages Exclusion"). (*See* Ex. B).

36. Even if the *Hobbs* Lawsuit alleged an "occurrence", which Nautilus expressly denies that it does, the Punitive Damages Exclusion bars coverage for the aggravated or punitive damages sought in the *Hobbs* Lawsuit.

37. Nautilus has and had no duty under the Nautilus Policy to defend CRPS against the *Hobbs* Lawsuit, or to indemnify CRPS for any judgment or settlement entered in the *Hobbs* Lawsuit.

38. An actual controversy exists between Nautilus, CRPS, and the Hobbs Estate, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

  b. Find and declare that the Punitive Damages Exclusion bars coverage under the Nautilus Policy for the claims asserted in the *Hobbs* Lawsuit;

  c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend CRPS against the *Hobbs* Lawsuit, or to indemnify CRPS for any judgment or settlement entered in the *Hobbs* Lawsuit; and

  d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## NO COVERAGE FOR PSYCHOLOGICAL INJURIES

39. Nautilus adopts and realleges the allegations in paragraphs 1 through 38 of its Complaint for Declaratory Judgment as paragraph 39 of Count III of its Complaint for Declaratory Judgment as if fully set forth herein.

40. The Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
\* \* \*

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

  a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. \* \* \*
    \* \* \*
  b. This insurance applies to "bodily injury" and "property damage" only if:

9

       **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

       **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

      \* \* \*

  **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

      \* \* \*

(*See* Ex. B).

41.    The Nautilus Policy defines the term "bodily injury" as follows:

**SECTION V – DEFINITIONS**

      \* \* \*

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

      \* \* \*

(*See* Ex. B).

42.    To the extent the *Hobbs* Lawsuit seeks damages for any psychological or mental injuries, the Nautilus Policy does not provide coverage for these damages because they do not constitute "bodily injury" as that term is defined in the Nautilus Policy.

43.    Nautilus has and had no duty under the Nautilus Policy to defend CRPS against the *Hobbs* Lawsuit, or to indemnify CRPS for any judgment or settlement entered in the *Hobbs* Lawsuit.

44.    An actual controversy exists between Nautilus, CRPS, and the Hobbs Estate, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b. Find and declare that the Nautilus Policy does not provide coverage for any psychological or mental injuries alleged in the *Hobbs* Lawsuit;

c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend CRPS against the *Hobbs* Lawsuit, or to indemnify CRPS for any judgment or settlement entered in the *Hobbs* Lawsuit; and

d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

/s/ Jill F. Endicott
Jill F. Endicott
Marisa E. Main
DINSMORE & SHOHL LLP
101 South Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: (502) 540-2300
Facsimile: (502) 585-2207
Email: jill.endicott@dinsmore.com
marisa.main@dinsmore.com
*Counsel for Plaintiff, Nautilus Insurance Company*