UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00485-GNS

NAUTILUS INSURANCE COMPANY                                                                 PLAINTIFF

v.

SOCAYR SFH, LLC d/b/a CRPS LIMITED
PARTNERSHIP PG1 #1-6; and
MICHESHIA NORMENT, as administratrix of
the Estate of Dequante Hobbs, Jr.                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DNs 22, 26). These motions are now ripe for adjudication. For the reasons that follow, the motions are **GRANTED**.

### I.   BACKGROUND

#### A.   Statement of Facts

On May 21, 2017, Wyatt Lamarr Williams ("Williams") fired several shots from his handgun, and one of the bullets struck and killed Dequante Hobbs Jr. ("Hobbs"), who was sitting at the kitchen table inside his home. (Second Am. Compl. ¶¶ 8-10, DN 33). Defendant Micheshia Norment ("Norment"), as administratrix of the Hobbs Estate, subsequently filed a complaint in Jefferson Circuit Court, Case No. 19-CI-01825, against Williams, Defendant SOCAYR SFH, LLC d/b/a CRPS Limited Partnership PG1 #1-6 ("CRPS") as the owner of the home, and Plaintiff

Nautilus Insurance Company ("Nautilus") as the issuer of a commercial lines insurance policy and an excess liability insurance policy to CRPS. (Second Am. Compl. ¶¶ 6-7, 11-12).[1]

In response to the Jefferson Circuit Court action, Nautilus filed this declaratory judgment action on July 2, 2019. (Compl., DN 1). Nautilus seeks, *inter alia*, a declaration it has no duty under either insurance policy to defend CRPS against or otherwise indemnify CRPS for claims made by Norment in the Jefferson Circuit Court action. (Second Am. Compl. ¶¶ 53-54, 57-58, 63-64, 73-74).

### B. Procedural History

Following a lengthy procedural history outlined in detail in this Court's previous Orders, Nautilus filed its Second Amended Complaint on March 31, 2020. SOCAYR and Norment (collectively, "Defendants") each moved to dismiss contending that this Court should decline to exercise jurisdiction under the Declaratory Judgment Act. (Def.'s Mot. Dismiss, DN 22; Def.'s Mot. Dismiss, DN 26).[2] The motions have been fully briefed and are ripe for decision. (Pl.'s Resp. Def.'s Mot. Dismiss, DN 24; Pl.'s Resp. Def.'s Mot. Dismiss, DN 30; Def.'s Reply Mot Dismiss, DN 34; Def.'s Reply Mot. Dismiss, DN 35).

## II. JURISDICTION

This Court has subject matter jurisdiction over this action via diversity, 28 U.S.C. § 1332, because Nautilus is incorporated and has its principal place of business in Arizona, CRPS and SOCAYR are incorporated with their principal places of business in Kentucky, Hobbs was a

---

[1] The Second Amended Complaint attached copies of the underlying state court complaint (DN 33-1), the underlying first amended complaint (DN 33-2), and the Nautilus insurance policies (DNs 33-3, 33-4).
[2] These motions to dismiss are actually directed at the First Amended Complaint. Even so, the Second Amended Complaint merely fixed a "clerical error" of the First Amended Complaint, such that it was unnecessary to render moot these motions. (Order 1, DN 32).

citizen of Kentucky, and the amount in controversy as pleaded exceeds $75,000. (Second Am. Compl. ¶¶ 1-4).

### III. DISCUSSION

Defendants' motions to dismiss ask the Court to decline to exercise jurisdiction under the Declaratory Judgment Act. (Def.'s Mot. Dismiss 2-4, DN 22; Def.'s Mot. Dismiss 1, DN 26).

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). A court's exercise of jurisdiction under the Act, however, is discretionary. *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). When exercising this discretion, the district court should ensure that any such judgment "will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted). The Sixth Circuit has provided the following five factors for courts to consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id*. Ultimately, these factors "direct the district court to consider three things: efficiency, fairness, and federalism." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citing *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 390-91 (5th Cir. 2003)).

### A. Whether the Declaratory Action Would Settle the Controversy and Clarify the Legal Relations in Issue

"In insurance coverage cases, most courts consider the first two *Grand Trunk* factors together because 'it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue.'" *Westfield Ins. Co. v. Harrington*, No. 1:19-CV-00037-GNS, 2019 WL 5698663, at *2 (W.D. Ky. Nov. 4, 2019) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008)). As the Sixth Circuit and this Court have repeatedly explained, a declaratory action related to insurance coverage will almost certainly settle the question of insurance coverage, but it will often do little to settle the underlying controversy. *See United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-00326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018), *aff'd*, 936 F.3d 386 (6th Cir. 2019) ("One line of cases approved of declaratory actions because they can 'settle the insurance coverage controversy,' while a second line of cases disapproved of declaratory actions because while they 'might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy.'" (quoting *Flowers*, 513 F.3d at 555)). As such, the question for the district court is whether it can provide declaratory relief based on "purely legal questions or by engaging in fact-finding that does not affect the parties in the underlying action." *Argonaut-Midwest Ins. Co. v. Johnson*, No. 3:14-CV-00395-TBR, 2014 WL 6804284, at *2 (W.D. Ky. Dec. 3, 2014) (internal quotation marks omitted) (citations omitted).

Nautilus here asks this Court to find that the insurance policies do not require Nautilus to defend CRPS against or otherwise indemnify CRPS for claims made by Norment in the Jefferson

4

Circuit Court action. (Second Am. Compl. ¶¶ 53-54, 57-58, 63-64, 73-74). This issue is redundant, however, of the one already raised in the state court action. Both the Jefferson Circuit Court Complaint and First Amended Complaint seek a declaration of rights claim that Nautilus does have a duty to pay for the damages alleged in that action. (Second Am. Compl. Ex. A, ¶ 38, DN 33-1; Second Am. Compl. Ex. B, ¶ 64, DN 33-2 [hereinafter State Court First Am. Compl.]). Nautilus, in turn, filed an Answer and Counterclaim in the state court action seeking declaratory relief that Nautilus does not have a duty to defend or indemnify CRPS or the other state court defendants. (Def.'s Mot. Dismiss Ex. 4, ¶¶ 14-18, DN 26-4). As such, any legal issue settled or clarified by this Court could also be answered by the Jefferson Circuit Court based on claims that were already filed before the present action was initiated. As such, a ruling on this issue would run contrary to the Declaratory Judgment Act's emphasis on efficiency, fairness, and federalism.

Furthermore, responding to Nautilus' various arguments as to why its insurance policies do not apply the facts of the underlying case—i.e., no coverage for assault or battery, no coverage for punitive damages, no coverage for psychological injuries—would necessitate fact finding that overlaps with Norment's underlying state law claims for negligence, gross negligence, negligent misrepresentation, failure to warn, breach of contract, and bad faith. (Second Am. Compl. ¶¶ 51-65; State Court First Am. Compl. ¶¶ 20-71). Most notably, the bad faith claim against Nautilus in state court, pursuant to KRS 304.12-230, will undoubtedly require overlapping fact finding and analysis with the issue of insurance coverage now before this Court.[3] Any such finding would be

---

[3] As the Kentucky Supreme Court has held:

> [A]n insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be

5

duplicative and potentially contradictory. There also appears to be disagreement about whether the incident constitutes an "occurrence" under the insurance policies, which poses another factual question. (Second Am Compl. ¶¶ 52, 57). Even if answering these questions only required limited fact-finding by this Court, the Jefferson Circuit Court will already be considering these same facts in detail and has the added benefit of access to all relevant parties. *See United Specialty Ins. Co. v. Seidenfaden's LLC*, No. 316-CV-00190-CRS-CHL, 2016 WL 6078307, at *5 (W.D. Ky. Oct. 14, 2016) ("The coverage issue is pending in both the state and federal courts, and USIC's insurance obligations depends on facts that will be developed in the state court. Additionally, the state court action involves all claims, including the insurance coverage dispute, and all parties, whereas the federal declaratory action does not.").

Finally, this Court has recently reached the same conclusion under similar circumstances. *See Secura Ins. v. TFGBAR, LLC*, 420 F. Supp. 3d 608, 613-14 (W.D. Ky. 2019) ("Secura has also moved for a declaratory judgment in the Kentucky suit, in which it asserts the same arguments it makes here. To adjudicate the issues before it, the Kentucky court will therefore need to decide the very issues Secura has asked this Court to adjudicate . . . The first two *Grand Trunk* factors therefore counsel against exercising jurisdiction."); *Everett Cash Mut. Ins. Co. v. Mann*, No. 1:17-CV-00201-GNS, 2019 WL 267734, at *2 (W.D. Ky. Jan. 18, 2019) ("There is a strong likelihood that the state court will address this particular issue as well as other factual issues that will be raised in this case. Accordingly . . . the first factors weigh against this Court exercising jurisdiction.").

---

shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

6

In its response, Nautilus makes two counterarguments—one that is now moot and one that lacks merit. First, Nautilus contends that "resolution of this issue will not create any confusion in the state court action, because claims alleged in that action by Norment are entirely improper and will be dismissed by the state court in short order," such that there will be no confusion in the state court action. (Pl.'s Resp. Def.'s Mot. Dismiss 11, DN 24). As such, Nautilus maintained that it "will only have this action remaining to have its coverage determination decided." (Pl.'s Resp. Def.'s Mot. Dismiss 11, DN 24). As it turns out, however, the Jefferson Circuit Court denied Nautilus's motion to dismiss Norment's claims against it for bad faith and declaratory relief. (Def.'s Reply Mot. Dismiss, Ex. D, at 9, DN 35-4). The Jefferson Circuit Court is therefore ready and able to move forward on these issues pending resolution of the present motion.

Second, Nautilus argues that the filing of an amended complaint in the state action rendered moot its counterclaim raising the insurance coverage issue. (Pl.'s Resp. Def.'s Mot. Dismiss 6, DN 24). This argument also misses the mark, however, because the filing of an amended complaint renders moot the defendant's answer, not the defendant's counterclaims. *See* CR 15.01; *Clark v. Johnston*, 413 F. App'x 804, 811 (6th Cir. 2011); *AVKO Educ. Research Found. v. Morrow*, No. 11-13381, 2013 WL 1395824, at *10 (E.D. Mich. Apr. 5, 2013).

In conclusion, the first two *Grand Trunk* factors weigh against exercising jurisdiction over this case.

    **B.**    **Whether the Declaratory Action Is Being Used for "Procedural Fencing" or as a "Race *Res Judicata*"**

"The third factor to consider is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for res judicata." *Flowers*, 513 F.3d at 558. This factor is intended to "preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have

done so for the purpose of acquiring a favorable forum.'" *Id*. (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). On the other hand, a court could should be "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id*. (citations omitted). For instance, jurisdiction should not be denied when the plaintiff has done nothing "more than choose the jurisdiction of federal rather than state court, a choice given by Congress." *Id*. (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986)).

As already outlined, Nautilus initiated the present declaratory judgment action after the state court action was filed. This case is therefore not one where Nautilus raced to federal court before Norment filed the Jefferson Circuit Court action. This action, however, was filed only after both Nautilus and Norment had already asked the Jefferson Circuit Court to weigh in on the very same insurance coverage dispute. (Def.'s Mem. Supp. Mot. Dismiss 3, DN 26-1). Quite literally, the present action does appear to be an attempt to have this Court rule on the coverage issue before the Jefferson Circuit Court does. *See Healthcare Underwriters Grp. of Ky. v. Lexington Ins. Co.*, No. 3:09-CV-778-H, 2010 WL 145116, at *3 (W.D. Ky. Jan. 8, 2010) ("Healthcare has willing[ly] exposed itself to multiple lawsuits on the exact same issue. It appears that the reason for such an action is to get a judgment in this Court, a presumptively favorable forum, before judgment is rendered in Pike Circuit Court."). In fact, the Jefferson Circuit Court recently placed the underlying declaration of rights claim in abeyance pending this Court's decision on the motions to dismiss. (Def.'s Reply Mot. Dismiss, Ex. D, at 1-2).

In *Flowers*, the Sixth Circuit noted several facts suggesting the plaintiff was not engaging in procedural fencing: "Scottsdale instituted this action several years after the state court proceedings began. Moreover, as Scottsdale was not a party to the state court action, the issue of its insurance coverage of Flowers was not before the state court." *Flowers*, 513 F.3d at 558; *see*

*also Maxum Indem. Co. v. Broken Spoke Bar & Grill, LLC*, 420 F. Supp. 3d 617, 624 (W.D. Ky. 2019) ("There is no competing state court declaratory action. Thus, the third *Grand Trunk* factor is neutral."). Distinct from both *Flowers* and *Maxum*, while Nautilus initiated this action after the state court action commenced, Nautilus and this identical issue were both already before the state court judge—i.e., there was "a competing state court declaratory action." Given that this dispute was already before the Jefferson Circuit Court when Nautilus initiated the present action, there is some indication of a race for *res judicata*.

In conclusion, the third *Grand Trunk* factor cautions against exercising jurisdiction in this matter.[4]

### C. Whether the Declaratory Action Would Encroach Upon State Jurisdiction

Next, a district court should consider "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. For this factor, there are three additional sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id*. at 560 (quoting *Bituminous*, 373 F.3d at 814-15).

---

[4] Even if there was no indication of a race for *res judicata*, this factor would at most remain neutral for Nautilus. *See United Specialty Ins. Co. v. Cole's Place, Inc*., 936 F.3d 386, 399 (6th Cir. 2019) ("If there is no evidence of procedural fencing, we often find that the factor is 'neutral' . . . ." (citation omitted)).

1. *Whether the Underlying Factual Issues Are Important to an Informed Resolution of the Case*

"The first of these sub-factors focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id*. As the Sixth Circuit has explained, "[i]n the context of actions seeking a declaration of the scope of insurance coverage . . . such questions can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id*. (citations omitted). "However, sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id*. (citation omitted).

Defendants are somewhat vague in their motions about exactly which facts the state court must resolve prior to this Court's resolution of the declaratory judgment action. Even so, the insurance coverage issue now before this Court is also before the Jefferson Circuit Court, meaning any factual findings made by this Court could conflict with those made in the state court. Similarly, Norment's bad faith claim against Nautilus will involve state court findings regarding Nautilus's obligations under the insurance agreements. *See Wittmer*, 864 S.W.2d at 890. At the very least, "a complete picture of the facts and circumstances surrounding the incident would likely help clarify the applicability of coverage." *Westfield*, 2019 WL 5698663, at *3.

2. *Whether the State Trial Court Is in a Better Position to Evaluate those Factual Issues*

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Generally speaking, Kentucky courts are in a better position to apply and interpret its own law. *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) ("[T]he district court held that the state court would not be in a significantly better position to evaluate the terms or

10

exclusions in the insurance contracts because both forums would apply Kentucky state law. However because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."). This general rule has "less force when the state law is clear and when the state court is not considering the issues," such as "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Flowers*, 513 F.3d at 560 (quoting *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)).

      The insurance coverage question here appears to be answerable via a relatively clear application of Kentucky law. Even so, this issue is already before the Jefferson Circuit Court, which is generally in a better position to apply and interpret its own law. Moreover, the Jefferson Circuit Court has the added benefit that the state court action includes all relevant parties. The Jefferson Circuit Court is therefore in a better position to consider all the claims against all the parties, including the claims for declaratory relief. Therefore, any decision by this court on the issues before the state court would offend principles of comity. *See Secura*, 420 F. Supp. 3d at 615 ("The issues involve the clear application of state law and are currently being considered by a state court; the second sub-factor therefore counsels against exercising jurisdiction, even if less strongly than if the issues involved novel or unsettled questions of state law.").

      **3.   *Whether There Is a Close Nexus Between the Underlying Factual and Legal Issues and State Law and Public Policy***

      "The final sub-factor focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such

regulation." *Bituminous*, 373 F.3d at 815 (alteration in original) (citation omitted). Because this Court is being asked to interpret a Kentucky insurance contract and the Jefferson Circuit Court is best situated to enforce Kentucky public policy on this front, this sub-factor weighs against exercising jurisdiction. *See Argonaut-Midwest*, 2014 WL 6804284, at *4 ("As this case involves a Kentucky insurance policy, this sub-factor also weighs against exercising jurisdiction.").

Because each of the three sub-factors weight against exercising jurisdiction, the fourth *Grand Trunk* factor as a whole counsels against exercising jurisdiction.

### D. Whether There Is a Better Alternative Remedy

The fifth and final factor for the district court to consider is whether there is a better alternative remedy than federal declaratory relief. *Grand Trunk*, 746 F.2d at 326. The Sixth Circuit has previously acknowledged a split in case law "regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Flowers*, 513 F.3d at 562 (gathering case law). As such, "rather than applying a general rule, [the court's] inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id*.

Again, Nautilus has already raised the declaratory question in the Jefferson Circuit Court. Moreover, as also noted, the Jefferson Circuit Court has the added benefit of having all of the issues and parties before the same state court judge. The state judge is fully capable of providing relief and is likely in a better position to do so given that the judge will be fully briefed on every aspect of the case. *See Seidenfaden's*, 2016 WL 6078307, at *6 ("In this case, the same issues are pending in the federal court and the Jefferson County Circuit Court. But the Jefferson County Circuit Court action is more comprehensive: unlike the action pending in this Court, all parties and all issues are before the state court. The Jefferson County Circuit Court is accordingly able to

provide a better, more effective remedy for the parties."). This Court has previously found that this factor cautioned against exercising jurisdiction even before the insurance company was involved in the underlying state action. *See Westfield*, 2019 WL 5698663, at *4 ("Although Westfield was not allowed to join the pending Hart Circuit Court action, it still has the ability to file a separate declaratory action in state court now, or wait for the resolution of the Hart Circuit Court case, then file suit over its obligations under the insurance contract. (internal footnote omitted)).

This factor also weighs against exercising jurisdiction.

### E.     Balancing the Factors

Finally, after analyzing each *Grand Trunk* factor individually, the district court must use its "unique and substantial" discretion to balance these factors. *Flowers*, 513 F.3d at 563. The Sixth Circuit has not assigned specific weight to these factors, as "the factors are not, of course, always equal." *Hoey*, 773 F.3d at 759. Ultimately, the district court is charged with "tak[ing] a good look at the issue and engag[ing] in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id*. (citation omitted). In this case, each of the five *Grand Trunk* factors cautions this Court, to varying degrees, not to exercise jurisdiction over the present matter. Overall, it would be wasteful and impertinent to have this Court rule on matters that were already before the Jefferson Circuit Court when this declaratory action was initiated. After considering these factors and the overarching concern with efficiency, fairness, and federalism, this Court will decline to exercise jurisdiction. The motions to dismiss will be granted.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motions to Dismiss (DNs 22, 26) are **GRANTED**. The Clerk is directed to strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

June 16, 2020

cc: counsel of record